STATE of Missouri, Respondent,

v.

David F. CANTRELL, Appellant.

No. 54946.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 11, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 15, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Thomas Francis Flynn, St. Louis, for appellant.

William L. Webster, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Presiding Judge.

Appellant challenges his conviction for murder, second degree. We affirm.

On the evening of March 8, 1978, at the G.J. Family Bar in South St. Louis, John King was fatally shot. The bartender and a woman named Joyce Browning were the only people present, but Ms. Browning was in the restroom at the time the shooting occurred. When police arrived at the scene, both witnesses claimed not to know who had shot victim. The police brought appellant in for questioning that evening, but did not arrest him at the time. Later, the bartender identified appellant as the murderer, but when the police attempted to arrest appellant, they discovered that he had left town. After a nine year search, the FBI located appellant in Florida and returned him to Missouri for trial.

At trial, the bartender testified that appellant shot the victim because of bad feelings over appellant's girlfriend, whom victim had dated. The bartender knew both appellant and victim socially and believed the two men were friends. According to

the bartender's story, appellant arrived at the bar first and showed him a gun he had just purchased. Victim later arrived at the bar and appellant indicated to the bartender that he was thinking of shooting victim. The bartender advised victim to leave, but he refused. Finally, the bartender convinced appellant to leave but as appellant walked out of the bar he called to victim then shot him. The bartender yelled, "Dave, don't" but appellant shot victim again. When the bartender attempted to call the police, appellant told him to wait until he left.

Ms. Browning testified that when she came into the bar, the bartender, whom she had met once before, introduced her to a man named Dave. Because he had a hat on, she did not see his face nor did she speak to him. Later as she was picking songs on the jukebox, Dave came up to her and told her to go to the restroom because something was going to happen and she would not like it. While in the restroom, she heard the bartender say, "Dave, don't," then a shot, then, "Dave, please don't do it," another shot, then Dave's voice saying, "let me out the door. If you don't let me out the door, I am going to kill you and I am going to kill the broad in the bathroom." Both the bartender and Ms. Browning testified that they did not originally identify appellant as the murderer because they were afraid of him.

Appellant testified in his own behalf. He admitted that victim was his friend and had dated his girlfriend but he denied killing victim. Instead, appellant claimed he had been at home that evening with some friends. One person injured herself and appellant remained at home to watch the children while the other adults went to the hospital. Because he heard that the bartender framed him and because he heard victim's family was seeking revenge, appellant left town. Appellant claimed that he intended to return to St. Louis when he had saved enough money to hire a good lawyer and receive a fair trial. The jury found appellant guilty and he was sentenced to life imprisonment.

■ Appellant's first point on appeal contends that the trial court erred in overruling a motion in limine seeking to prevent evidence of his prior convictions. If appellant testified, the prosecutor planned to impeach him by presenting evidence of 1957 and 1961 guilty pleas to charges of burglary, stealing and armed robbery. Appellant sought to prevent introduction of these offenses on the ground that they were remote in time. The court denied the motion in limine, stating that it "would be appropriate to permit the state to make the inquiry." On appeal, appellant again argues that the age of the crimes makes them of little value and thus their prejudicial effect outweighed any probative value.

Because denial of a motion in limine is an interlocutory order, appellant was required to object at trial to preserve the matter for appellate review. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985). Appellant did not object to use of the past crimes at trial; in fact, appellant's attorney first elicited testimony concerning the crimes in his direct examination of appellant. Consequently, the denial of the motion in limine was not preserved for review and we merely examine the record for plain error.

Unlike Federal Rule of Evidence 609, the Missouri statute allowing use of prior offenses to impeach a witness does not place any time limit on the offenses. § 491.050, RSMo 1986. Appellant claims that such an application is unconstitutional and requests that we judicially adopt the time limitations of Federal Rule 609. The Missouri Supreme Court was presented with and failed to accept this claim nine years ago. *State v. Williams*, 603 S.W.2d 562, 568 (Mo.1980). In addition, this court recently denied a similar claim of error, stating that "[a]ny departure from § 491.050 is a job for the legislature, not the courts." *State v. Jesse*, 738 S.W.2d 597, 598 (Mo.App.1987). We have not changed our position. If Missouri is, as appellant claims, "in the backwater of the law," we will not join the main stream unless the legislature indicates this is the preferable course.

After examining the record, we see no cause for the trial judge to depart from the statutory law on this issue, if indeed he had that option. *See State v. Morris,* 460 S.W.2d 624, 629 (Mo.1970). While appellant's credibility was certainly crucial to his defense, the prior offenses do not indicate a propensity to commit murder nor were they the only evidence denigrating appellant's character. We find no error in denial of the motion in limine, and certainly no plain error.

Appellant follows this contention with a claim of error concerning the jury instruction used in connection with the past offenses. He claims the court erred in giving the prosecution's proffered instruction instead of his because the instruction given listed each prior offense and because it included the optional last sentence.

■ Both instructions were based on Missouri Approved Criminal Instruction 310.10, which at one point notifies the drafter to fill in the past offenses by stating "specify offenses." Appellant identified the offenses as "burglary, stealing and robbery." The prosecution identified the offenses as "robbery in the first degree armed with a dangerous and deadly weapon, burglary in the second degree and stealing over $50.00, stealing a motor vehicle, burglary in the second degree and larceny." Appellant claims the latter identification unduly highlighted the offenses, thus prejudicing him, and cites a number of cases concerning the presumed error in violating the Missouri Approved Criminal Instructions and notes on use. *State v. Cook,* 727 S.W.2d 413, 415 (Mo.App.1987); *State v. Oliver,* 720 S.W.2d 45, 46 (Mo.App. 1986). The instruction given in this case, however, does not violate the MAI–CR prescriptions; it falls within a reasonable interpretation of the instruction to specify offenses. Consequently, there is no presumption of error. While the form of identification used was not as favorable to appellant as his own, we do not feel this manner of identifying the offenses unduly prejudiced him.

■ The second identified "error" in the instruction is that the optional last sentence was included when the notes on use state it cannot be given unless defendant so requests. MAI–CR3rd 310.10 Note 2. Appellant claims he did not make such a request. His proposed instruction, however, included the following version of the optional sentence: "You must not consider such previous conviction as any evidence that the defendant is guilty of any offense for which he is now on trial." The instruction given differed only in that it correctly identified the prior offenses as pleas of guilty rather than as convictions. Appellant's proposed instruction including the optional sentence is in effect a request that it be given, thus there was no error in using the sentence.

■ Appellant next attacks the trial court's failure to declare a mistrial when the prosecutor, in cross-examining appellant, questioned him about some bullets found in his car. The prosecutor had previously agreed to suppress any mention of the bullets because they were discovered during a warrantless search. The bullets were not directly related to the crime since they were for a .357 magnum gun which was not the type of gun used in the killing. During cross-examination, however, appellant denied ever owning a gun, in particular a .357 magnum. The prosecutor then stated, "Well you had ammunition for that gun." The defense attorney objected and requested a mistrial. The trial judge sustained the objection but denied the mistrial.

Mistrial is a drastic remedy which a trial court should only employ in extraordinary circumstances. *State v. Johnson,* 700 S.W.2d 815, 819 (Mo. banc 1985). When the error complained of involves improper questioning of a witness, the trial court can often diffuse the prejudice by asking the jury to disregard the question and thus eliminate the need for a mistrial. *State v. Alexander,* 706 S.W.2d 21, 23–24 (Mo. banc 1986). In addition, the strength of the case against a defendant can affect the need for a mistrial. *State v. Burroughs,* 729 S.W.2d 571, 574 (Mo.App.1987). On appeal, the reviewing court will only examine a denial of mistrial to determine if the trial court abused its discretion as a matter of

law. *State v. Young*, 701 S.W.2d 429, 434 (Mo. banc 1985). This standard stems from the trial court's ability to personally view the impropriety and its better position to determine any prejudicial effect. *Id.*

In the case at bar, the trial court sustained the objection and instructed the jury to disregard the question. In addition, the improper question did not concern any fact material to the charged crime. At most, the question undermined defendant's credibility and his assertion that he never owned a gun. Given the strong evidence in this case, particularly the testimony of an eyewitness, we cannot hold as a matter of law that the question was so prejudicial that a curative instruction would not eliminate the need for a mistrial.

 In a related point, appellant claims the trial court should have granted a mistrial because repeatedly improper questioning by the state's attorney cumulatively resulted in prosecutorial misconduct. He identified a number of portions in the transcript where the prosecutor posed questions to which objections were sustained and the contention appears to be that because so many improper questions were asked, appellant must have been prejudiced. The transcript indicates that most of the improper questions were not the result of intentional tactics. The record does not reveal any exceptional prejudice requiring a mistrial nor does appellant identify such prejudice. Given the discretion accorded trial courts in this matter, *Young*, 701 S.W.2d at 434, we cannot hold that failure to grant a mistrial on these grounds was error.

 Appellant's last point claims the trial court erred in its handling of a question of juror misconduct. At the sentencing hearing, the defense produced James Nelson, appellant's brother-in-law, who claimed that on two occasions during the course of trial, he observed two spectators speaking to a juror in the hall. Mr. Nelson did not hear the conversation and he did not inform appellant of the incidents until after the verdict. The spectators had been seen sitting with victim's mother during trial and Mr. Nelson's description of the juror resembled juror Beachler. The trial judge refused to grant a mistrial or to conduct further investigation based on this testimony. He felt there was not sufficient evidence of misconduct to warrant further inquiry and characterized the allegation as speculation due to the vagueness of the observation.

The facts of this case are similar to *State v. Eaton*, 504 S.W.2d 12 (Mo.1973), which involved a conversation between the complaining witness and a juror. In *Eaton*, the Missouri Supreme Court stated:

> There has been no showing that anything relating to the case on trial was discussed during the conversation or that any prejudice to appellant's rights resulted ... 'While the conduct of a prosecuting witness in even innocently visiting with the jurors is to be avoided, nevertheless, the court had broad discretion in determining whether a mistrial should be declared.'

*Id.* at 22 (quoting *State v. Miles*, 364 S.W.2d 532, 536 (Mo.1963)). The opinion then affirmed the trial court's refusal to grant a mistrial.

In the case at bar, there is likewise no evidence as to the topic of the conversation nor is there any indication of prejudice. As the trial judge noted, the jurors were instructed not to discuss the case and the juror in question may have been discussing the weather with people she did not even recognize as spectators. Given these facts, we cannot hold that the trial court abused its discretion.

The judgment is affirmed.

SIMON and GARY M. GAERTNER, JJ., concur.